May it please the court, Tom Hartzell on behalf of Robert, yes it is, Sproat, and I'd like to reserve three minutes for a rebuttal if needed. The trial court in this case coerced the jury into reaching a verdict. It waffled about it. It couldn't make up its mind. It decided it wouldn't send them back. It even admitted that it would force the minority to reach a verdict, but what they did, and I call it a de facto Allen charge, and that might be somewhat of a misnomer, is what they did after the jury was deliberating for a full day, and they came back with a note that they couldn't reach a verdict on some counts, and we went through, I mean the counsel was called in, and we dithered like nervous doctors over this and that, and eventually by, oh somewhat after four that afternoon, it was determined that the jury declared themselves hopelessly deadlocked, that they couldn't reach verdicts on any of the 10 counts against my client, and they told the court that it wouldn't help if they were brought back in the next day, when the court asked specifically that question, and the court, after hearing all that, said okay, well come back tomorrow. Why is that coercive? Because they're told that they have to come back and continue deliberating. No, they weren't told they had to continue deliberating, and it seems to me that their note saying asking permission to continue to deliberate, shows that they didn't understand that they had to. Why would they ask if they thought there was no choice? Well that note came the next morning at 935. Right, but when they came back, they must have thought they didn't have to, or they wouldn't have asked. When they said that they couldn't reach a verdict, and they were told they had to come back, that's when the damage was done. But isn't the question what the jury would perceive, and the jury perceived that it had a choice, because the next morning it says we would like to keep deliberating. Is it okay? No, they already, they didn't have a choice. They said they're done. They're deadlocked. There's no way if we come back we can reach a verdict, and the judge says you're coming back. Well, there are two things about that that are problematic. The first I've already mentioned, which is the jury apparently didn't perceive it that way, and the other is that as the judge explained, there seemed to be, you know, hesitation. This is one reason we give finders of fact and judges and juries a lot of leeway, because there's body language. There's hesitation. There's, you know, where are you looking when you say something, and are you, do you have a nervous twitch? Here the judge said, you know, there was some hesitation in the can't find agreement here, and that was, why shouldn't we respect that? Judge Graber, I disagree with you. I don't see where it says that there's hesitation in that we can't find... Well, I'm looking at SER 1686-87. Juror number 37 yesterday, she emphasized they would not be able to reach a verdict on all counts. She asked her about it. She emphasized the all, and goes on and on. There was hesitation there. That's why I asked them to come back. That's the judge saying, I'm seeing something beyond the transcript in the behavior of the jurors that says maybe they really aren't done. The judge called them in and asked them if, this is the day before, when the judge discharged them at 430 and asked them to come back at 930. Because it was late. The judge says, it's late, let's just all come back in the morning, without really saying why. She didn't quite say that. She says, I'm asking the jury to come back at 9 tomorrow, and the jury, then she says, well, would 930 be better? They said yes, they want 930. The foreperson said that would be less stressful for us to come back at 930. Yes, but nobody likes the morning commute, is all that means. Oh, in Tucson, there's not much of one. But at 232 in the afternoon, the jury sends out the note that we are hopelessly deadlocked. And then, by the time the lawyers get there, it's a little later, and there's some question between the government and the defense attorneys about whether there is decision on any of the counts. The jury was called back in, and they were actually polled if any of them would disagree that they're incapable of reaching any verdicts on any counts. And they all agreed they were incapable of reaching any verdicts on any counts, that they were seriously deadlocked. Isn't it a pretty common practice, when that kind of situation happens, for the court to send the jurors home? Let's sleep on it, and we'll talk tomorrow. I have never had a case like that. I guess when I was a district judge, I guess I coerced many verdicts, because there were many times when I would send the jury home. After a note saying they can't reach a verdict? Yes. Well, they didn't say it as emphatically as you are, that says the jury is at an impasse, we need advice, would coming back tomorrow help? They said, no, we don't think breaking today and resuming will change our impasse. It was not as emphatic as what you're saying, there's no way, and so forth. They didn't say that. Okay, now, the court says, before they bring them in that afternoon, I am going to ask them some questions, and then proceed. If they can't reach a verdict, and they, I am not going to force them to come back. They've been deliberating since 2 o'clock yesterday. They stayed until about 10 minutes till 5. But the judge explained that, as hearing the hesitation in the voice of the juror, and with things like, at this time we can't do it, and we can't do them all, and you know, I think you're downplaying the role of being there in person, from the judge's perspective and perception of what the jury was about. Well, you're quite right there, that at one point the foreperson said, yes, at this time there's no possibility of reaching a verdict, if they are sent back. Quote, at this time we have said that, no, not a unanimous verdict on all counts. But then the judge continued, and has them all there, and asks, as to all jurors, is there anyone that disagrees with the answers provided by your foreperson, juror number 37? Well, counsel, let me interrupt you again, and ask the following. Let's assume that there was some hint of coerciveness of just bringing them back without anything more. The actual instruction given clearly told them that they did not have to reach a verdict, clearly told them that, and you did not object, or your, whoever was the trial counsel, did not, did not object to the wording of the instruction, and the government didn't like it, because it was so defendant friendly, I guess. So, why wouldn't that dissipate any, any coercion, if you were theoretically correct about returning them to the courtroom? Because at that time, the horse had left the barn. The jury came back at 930, and the note comes out that we would like to continue to deliberate at 935. And they're already forced to come back when they said, it's hopeless, we cannot reach a verdict. They all agreed, we cannot reach a verdict, unanimous verdict, on any of the counts. Sorry, can I stop you there, because I don't understand the transcript to say that. At 1678, it seems like both the counsel and the court had understood the earlier answer as saying that there was agreement on some counts, just not on all. That's what the government suggested, and I, Mr. Sprott, on Mr. Sprott's behalf, pointed out to the, to the judge, Your Honor, I didn't hear that. The judge called the jury back in and said, let's clarify this. If, are there any verdicts on any counts? I mean, I think the question, it was like a double negative. It was, you know, are you unable to reach a verdict on all counts? That could mean you can't get a unanimous verdict on every one of the ten counts, but that still could mean you got a verdict on five or three. Well, no, the judge says, listen, let me ask them about that. If they've got some agreement as to some counts, and the government agrees, the jurors come back in, the judge, the trial court says, Juror 37, is there a unanimous agreement as to some of the counts? Juror 37? No. I understand that, but earlier, so this is, it seems like earlier, they, the people in the courtroom had understood the answer to be that there was agreement on some counts, and so, isn't, if so, isn't just that source of confusion that needs to be resolved something that they could ask about the next morning when time is out at 430? Well, first of all, the only person who believed that there, the only confusion was with the prosecutor, the AUSA, who was there, who said... No, the court says, that's what she said, that there's agreement on some counts. The court says that at line 20 on page 1678. Okay. Okay, yeah, the prosecutor asked if there's agreement in some counts, and the judge says, that's what she said, you know, at which, which point I say, you know, I disagree. I'd say, I did not hear her say there's agreement in some counts. I heard her say... No, it was ambiguous. That's the point. Why couldn't that alone be a reason to bring them back? Well, they, she did bring them back in right then and ask that question, is there agreement on any of the counts? And they clarified, no, there's no agreement on any of the counts, and they also pointed out there's a minority of us, a minority who can't agree. So, at that point, there's a minority identified, and, you know, this goes on for a while, and the judge says, without any kind of cautionary instruction, any ameliorative words to the jury, come back tomorrow morning. We'll see you at 9, 930 it turns out. Come back at 930. At that point, the coercive impact, the effect on that minority of jurors is, I mean, it's clear. And then five minutes, I mean, when you think about the factors that Berger suggests, you know, applying to whether... Are you aware of any case in which merely asking the jury to come back the next day without anything else going on is held to be coercive? I did not see any citation to such a case. I didn't find one. Well, no, but I can't find the opposite either. And I have found the cases that recognize what's called a de facto Allen instruction when the court does something that might have a coercive impact on the jury. I mean, Jimenez v. Myers, you know, I'm speaking of that. I mean, there's several cases that talk about a de facto Allen charge, and that's what we had here when the judge says, okay, there's a minority who won't agree. You say you can't possibly reach an agreement. Come back. So it only takes five minutes. One of the Allen charge factors to determine whether there's coercive impact on the jury is how long after the charge until they reach a verdict. This is analogous. How long after coming back, being told, being ignored as to their protestations, did they decide, okay, we'll keep deliberating? How did they keep deliberating? Five minutes. But before that, they had refused. There's nothing that can be done. But having been brought back the next day without being told, without being given that cautionary portion of what's a standard Allen instruction in this circuit. But you did not, excuse me, you did not object to the wording of the instruction that was given. By then, the harm had been done. Well, but now, I suggest to you that you can't now tell us that it was badly worded, having agreed to the way it was worded. No, no, that's not, that's not the coercive charge here that I'm appealing. I certainly agree. You're just saying that the fact that they were brought back the next morning all by itself is the problem. That is the problem. Okay, so that's it. You don't rely on the wording of the instruction or concede that it's helpful to your client either. You just say it doesn't matter. Well, it doesn't matter because this was after that 935 AM note from the jury that we would like to continue, continue deliberating. And most of what the jury instruction said that the judge proposed and gave to the jury was don't surrender your conscientiously held beliefs in order to reach a unanimous verdict, which is what should have been said before she sent them home the night before. What she did is when, they're deadlocked. There's no way they say they can reach a verdict and the judge tells them to come back after telling, telling us in court I'm not going to bring them back if they can't reach a verdict. And then you're suggesting, suggesting that there is some inflection, some body language. I'm not suggesting, and I was reading from the transcript about what the judge who was there in person said about it, that there was hesitation and you did not challenge that finding in your brief. Well, she had, she had waffled on that and she decided to bring them back and it seemed to me a bit of post hoc rationalization. But I mean, I'm not going to argue with the judge about what she says about her observations, but I did argue strenuously about bringing them back. I went on, you know, probably ad nauseam. That was definitely preserved for our review. And that to me is, is the error here and why this case must go back and for a retrial that jury was coerced. We can't reach a verdict. Come back without saying we understand you can't reach a verdict. We're going to ask you to come back without the ameliorative or cautionary portion of this de facto Allen charge. That jury was coerced. The minority felt they were singled out and they ended up deciding that yes, indeed, they could keep deliberating because they knew if they didn't keep deliberating, the judge was just going to keep them there in the jury room. And this... You've used up basically all your time. Do you want to save anything for rebuttal? I can still give you a minute, but I think maybe we should stop and wait until after the permit. But I don't want to surrender the other arguments I made in my appellate brief, but I will submit those on the brief. The ones about the 78 FFA, no knowledge clause, and also the sufficiency argument. Is it the government's turn now? Yes. Thank you. Good morning, your honors. Terry Chris for the government. May it please the court. The district court did not coerce the jury to reach unanimous verdict in this case. When you look at decisions like Berger, they emphasize that we're looking at the totality of the circumstances. Berger even says that no single event or factor is talismanic when evaluating this. So it's not fair to merely limit our inquiry into the court's decision to recess the jurors for the afternoon. Instead, we have to look at the total picture of the jury deliberations. That includes everything that happened before and also everything that happened afterward. So we should include when the jury comes back the next day and the court gives them the instruction. And that instruction is very helpful here. It tells them three really important things. First, it tells them not to interpret the recess as a command to continue deliberating. And we know that they in fact didn't interpret it that way because they asked the court's permission to continue the deliberations. You wouldn't need to do that if you thought the court had already told you to keep going. Secondly, the instruction told them that they should not surrender their honestly held beliefs about the case. And that's important because in a general generic Allen charge, there's usually language saying don't be afraid to reconsider your beliefs. Here we have something much milder. And again, cases like Berger treat that as a factor against coercion. And then third, that instruction said if you want to go home at any time and you've deadlocked, you can do so. So any juror who up to that point had for whatever reason thought the only way we're getting out of here is to reach a verdict, would at that point know, oh we could go home now. And yet they go back into the room and deliberate for another day and a half. So was 430 the normal time that court stopped in this court? I'm afraid I don't know the answer to that. I think that's generally about the right time. Maybe they could have gone on a little longer. I don't know. I think the court's decision to adjourn at that moment was of course motivated in part by the fact that it was the end of the day. But also they had been deliberating all day and there was perhaps some thought that sleeping on it would help. Berger actually talks about that a little bit. So in Berger, the jury is recessed for the weekend when they're deliberating and the court treats that as a factor against coercion. Makes the point that when the jury has the weekend to think about it apart from any instructions from the court or their other jurors, that's actually a factor against them being coerced. Here it's a shorter timeframe, but the fact that they're able to go home for the evening and come back, it does explain perhaps why they were willing to continue deliberating. Another point I'd like to make in response to something that defense argued is we don't have a five-minute deliberation here. We have a day and a half afterwards. The five minutes from the time they come in to the time they send the notes and they want to continue deliberating was not deliberating itself. It was not them saying we have a verdict. It was just merely them saying we're ready to discuss the case again. How long was it? A day and a half? It was about a day before they reached their deadlock and it was about a day and a half after they began deliberating again. And critically, there's no indication of the record they did any deliberating in the interim. So from the time that the court brought them in and pulled them and adjourned them to the time it gives its curative instruction at the end, they've done no deliberation in between. So when they finally do resume their deliberations, they have the benefit of the court's full advisement on the matter. So when we look at those things, even if we thought there was some coercion with the adjournment, the instruction would have cured it. But of course that's not our position. We don't think there was any coercion with the adjournment itself either. Critically, the court never actually told them to go back in and deliberate. And for that reason, we don't have an implied Allen charge here. Certainly the court didn't say any of the other things that would be present in an Allen charge, such as be prepared to reconsider your beliefs. The court simply said we're coming back tomorrow and they did and they proceeded from there. And also, again, cases like Berger discuss if there are any other factors or indicia of coercion. And those are lacking here too. This is not a case where the court knew anything about the composition of the jury's vote. It is the fact that somebody mentioned the word minority does not mean the court knew who the minority was. Necessarily, if there's a deadlock, you have to have some majority of people on one side and minority on the other. But the court doesn't know which side is leaning towards acquittal and which side is leaning towards conviction. The court doesn't know which jurors are in which sides of this. The cases are concerned about that because if a juror thinks that the judge knows they're one of the holdouts, that juror is more likely to feel pressured when the judge gives an instruction. But we have nothing in the record here to suggest that in any way any specific juror would have felt singled out by the court. And in theory, I suppose, it could have been ten for acquittal and two who were adamant the other direction. So, I mean, asking them to come back could have been to the defense benefit in theory. That's quite right. We don't know anything about the composition of the jury's vote at this point and neither does the court. And more importantly, the jury doesn't think that the court knows anything about that composition either. So, when you put the total picture together under the totality of the circumstances, you do not have coercion in this case. If the court doesn't have any further questions about... Could you just address the lack of knowledge argument at sentencing? Yes, Your Honor. So, under the cases such as Reyes, we've clarified that the principal question here is whether the defendant lacked knowledge that their conduct was illegal. In this case, whether a defendant who had already been convicted for willfully committing securities fraud somehow didn't know that it was illegal to commit securities fraud. And that's a hard road to walk. This court noted in Ellison that when you already have a willfulness violation of a 10b offense, it would be an uphill battle to argue somehow you didn't know it was also illegal. What was Congress up to when they added that provision? Congress merely was making sure that we didn't have people who for some reason wouldn't have known that securities law in general was illegal. The difference, though, and again Ellison makes this point, the statute isn't just about 10b. The no-knowledge defense is about the entire panoply of securities laws and regulations. 10b is a And Ellison says, well, that's not any fault of the drafting. That's just the nature of the violation at play. And it is difficult to show that you didn't know it was illegal to defraud people in selling securities. And the only evidence the defendant has in his favor is his affidavit basically saying I'm from out of country and have not had experience with securities. But that doesn't even speak to the substance of whether he knew fraud was illegal. And he says nothing about substantively whether he knew or didn't know the illegality of fraud when it comes to securities transactions or anywhere else. So for that reason his affidavit was facially legally insufficient. Beyond that, the court didn't even have to accept the affidavit as true given that a jury had just convicted him of 10 counts of fraud. So his credibility was suspect. So for those reasons, the district court didn't abuse of discretion when rejecting that affirmative defense at sentencing. And I guess I would note that it was an affirmative defense. The government did not have a burden to prove the ignorance in this case. I'm happy to field any questions on sufficiency of the evidence if the court has them. It's obviously a very extensive record. But if the court doesn't have any specific questions, we would rest on our briefs. Otherwise, we would respectfully request that you affirm the convictions and sentences. Thank you. Thank you, counsel. We'll give a minute for rebuttal. First, your honors, 5 o'clock is the usual stopping time. Jurors must be out of the building by 6 at the district court in Tucson. 4.30 is not the stopping time. Now, may I quote the trial court judge? I think that sending them back at this, having them come back and go back at this point, having them come back at this point, when she just said there is a minority of them that will not change their mind, even if there was more time, that's what, to me, makes it seem that then we are bringing in that minority number to try to get them to change their mind. I think had she not said that, then I think I would be more inclined to do it. But at this point, I don't feel comfortable sending an Allen charge and having them come back. Now, so yes, there was a minority identified. Yes, the court knew there was a minority identified. On which side? There's no way of telling that. That's right. It could have been 10 or 11 for acquittal at that point. It didn't turn out that way, but it could have been. But the point of the jurors being coerced isn't whether they wanted to acquit or whether they wanted to convict. The defendant is having them give up their honest convictions because the court forces them into deliberating after they've said we can't reach a reach a conclusion. Without that wonderful language that says don't give up your conscientiously held beliefs and opinions. So I guess I pretty much used it up. I'm here if you've got any other questions. And thank you very much. Good to see you all. Thank you both sides for the arguments. This case is submitted.
judges: GRABER, PAEZ, FRIEDLAND